107 So.2d 27 (1958)
STATE of Florida ex rel. CHARLOTTE COUNTY, Florida, et al., Relators,
v.
Julian R. ALFORD, Chairman, et al., Respondents.
Supreme Court of Florida.
November 26, 1958.
Farr & Farr and Earl D. Farr, Punta Gorda, for relators.
Richard W. Ervin, Atty. Gen., Joseph C. Jacobs and T. Paine Kelly, Asst. Attys. Gen., for respondents.
DREW, Justice.
We entertain this original mandamus proceeding pursuant to the constitutional provision authorizing this Court to issue writs of mandamus where any board representing the public generally is named as respondent.[1]
The provisions of the Florida Constitution[2] germane to the disposition of the *28 matter now before us are that portion of sub-paragraph 4, Art. IV, Sec. 30, providing:
"The Commission shall also have the power to acquire by purchase, gift, all property necessary, useful, or convenient, for the use of the Commission in the exercise of its powers hereunder,"
and sub-paragraph 6 reading as follows:
"The funds resulting from the operation of the Commission and from the administration of the laws and regulations pertaining to birds, game, fur bearing animals, fresh water fish, reptiles, and amphibians, together with any other funds specifically provided for such purpose shall constitute the State Game Fund and shall be used by the Commission as it shall deem fit in carrying out the provisions hereof and for no other purposes. The Commission may not obligate itself beyond the current resources of the State Game Fund unless specifically so authorized by the Legislature."
Prior to the effective date of such constitutional amendment the legal predecessor of the Game and Fresh Water Fish Commission purchased about 60,000 acres of land in Charlotte County for, among other purposes, "the propagation of game, particularly quail." Said land was conveyed to the State of Florida for the use and benefit of the Commission on Game and Fresh Water Fish. It has been used since the date of its acquisition for such purposes.
In 1950 this Court was presented with the question[3] of whether or not lands held and used by the Game and Fresh Water Fish Commission for the propagation of game and fish are subject to taxation for county debt service and general operating expenses. The land involved in that case was the identical land involved in this. There we held that while the act in effect at the time of the acquisition of said lands[4] provided that the same should not be exempt from state, county or district taxes, a subsequent enactment,[5] prohibiting the levy of any tax against lands or other property of the State of Florida (except under the conditions and circumstances therein named) was in conflict therewith. Therefore, we determined that no authority existed at that time for imposing debt service or general operating taxes of the county on the lands held for the State in the name of the Commission.
In 1953 the Legislature adopted an act which furnishes the basis for this litigation.[6] This act is apparently designed to restore to the tax rolls of Charlotte County the lands in question. The title to the act, among other things, provides "for the assessment and collection of Taxes thereon for county purposes." (The quoted language shall be later referred to.) It authorizes the Board of County Commissioners to place the tract on the tax rolls of Charlotte County and to assess the same for county purposes. It provides a method for fixing the valuation thereof and prescribes the duty of the Tax Assessor and the Board of County Commissioners with reference thereto. It contains a provision that "only fifty per cent of the said total valuation may be used in connection with fixing the rate of taxation by the Board of County Commissioners." Moreover, the act provides that the amount of taxes which shall be paid on said lands by the Game and Fresh Water Fish Commission shall be annually *29 one-half of the income from all sums received in the operation of said lands from leases, grazing rights, timber, oil, gas, permit fees, etc., or the total amount of the taxes assessed against said lands, whichever is the lesser amount. There is a finding in the act that the income from the lands is not part of the State Game Fund mentioned in the Constitution nor is such income funds resulting from the operation of the Commission within the purview of said section.
The petition for the alternative writ alleges that the Commission has not complied with the act and prays that it be required to do so.
That these are State lands is not subject to serious question. In the Webb case[7] Charlotte County urged upon this Court the proposition that, at least insofar as tax exemption was concerned, there was a distinction between "`State owned' lands" and "state game lands." Inherent in the decision in that case is a rejection of this contention. The opinion is concluded with the holding that "* * * there is no legal authority for imposing [county taxes] on lands held for the State in the name of the Commission."
Although our statutes[8] specifically exempt such State owned lands, such exemption is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government.[9]
Petitioners, apparently now conceding the point just alluded to, argue that the 1955 act, heretofore discussed,[10] specifically authorized the county to levy taxes against this particular land, and that such power is clearly possessed by the Legislature. That, within constitutional limits, the Legislature may provide for the taxation of lands or other property of the State, is readily conceded. The question arises, however, whether the subject act actually does so provide.
Parenthetically, a most serious question, raised in the return of the Commission  but not argued in the briefs, is whether the act is invalid because of the constitutional provision that no special or local law may be passed by the Legislature "for assessment and collection of taxes for State and county purposes."[11] It is not, however, necessary to pursue this unargued proposition because a casual examination of the act under consideration leads to the inescapable conclusion that the act does not  even though it professes to do so  constitutionally authorize the taxation of these state owned lands.[12] The most that can be said for the act is that it attempts to direct the Commission to make an annual payment to Charlotte County, in lieu of taxes. We direct our attention to this proposition.
The Constitution provides that the funds of the Commission may be used only for certain purposes.[13] The questioned act, upon which this litigation rests, obviously attempts to do what the Constitution says may not be done; it is therefore void.
It is argued by the relators in this cause that to recognize the tax exempt status of this large tract of land in Charlotte *30 County places an undue and unjust burden upon the remaining taxpayers in said County. It is further argued that it was never intended that the Game and Fresh Water Fish Commission should go in competition with private industry and individual taxpayers in renting said lands for grazing, in allowing the construction of signs on said lands for compensation, in leasing the mineral rights thereon and in renting the stumpage rights. The power of the Commission, however, to do the things questioned is not before us in these proceedings. Whether the uses related are consistent with the trust under which these lands are held by the State for the use of the Commission may be questionable but the issue is not before us here for determination.
As to the burden placed upon the remaining taxpayers in the County by the exemption of this property from taxation and the argument that this land should contribute its fair share of taxes to Charlotte County, the answer is found in the express mandate in the Constitution itself where the people provided that the funds to be derived by the Commission from its operation would be used solely and exclusively for the purposes therein mentioned. The fact that some funds received by the Commission may be received from ultra vires contracts does not justify nor authorize a diversion of these constitutionally restricted funds. It could well defeat the whole plan of the constitutional amendment if sanction would be given to every political subdivision or entity in this State to invade, under the guise of taxation, these trust funds. Undoubtedly in those counties and cities where state buildings, universities, churches and similar tax exempt properties are located, there is a heavier tax burden upon the remaining property but this has never been recognized as a valid reason for subjecting such properties to taxation. The fact that such political entities continue to clamor for the establishment of such tax exempt institutions within their boundaries effectively destroys the argument that they are detrimental to the welfare of such communities.
The motion for peremptory writ notwithstanding the return is denied, the alternative writ is quashed, and the petition is dismissed.
TERRELL, C.J., and THOMAS, HOBSON and ROBERTS, JJ., concur.
NOTES
[1] Art. V, Sec. 4(2), Florida Constitution, F.S.A.
[2] Art. IV, Sec. 30 creating the Game and Fresh Water Fish Commission and defining its powers and duties.
[3] State ex rel. Charlotte County v. Webb, Fla., 49 So.2d 93.
[4] Sec. 6 and 67 of Ch. 13644, Laws of Florida, Acts of 1929, F.S.A. §§ 372.12, 372.19.
[5] Ch. 15639, Acts of 1931, F.S.A. § 192.08.
[6] Ch. 30275, Acts of 1955. This Act was vetoed by the Governor. His message observed that the act "clearly [is] an attempt to deal with and control the state game fund and is in violation of the Constitution." The act was passed, the veto to the contrary notwithstanding, during the 1955 session.
[7] State ex rel. Charlotte County v. Webb, supra [49 So.2d 95].
[8] 192.08, F.S.A.
[9] 61 C.J. 366; 84 C.J.S. Taxation § 200. Also see Spangler v. Fla. State Turnpike Authority, Fla., 106 So.2d 421, for a discussion of the analogous proposition of immunity from suit of state agencies.
[10] Ch. 30275, Laws of Florida, Acts of 1955.
[11] Art III, Sec. 20, Florida Constitution. The title to Ch. 30275 contains the words "[providing] for the assessment and collection of Taxes thereon for county purposes."
[12] Art. IX, Sec. 1, of the Florida Constitution provides for a "uniform and equal rate of taxation."
[13] Quoted in the forepart of this opinion.