642 So.2d 1097 (1994)
FLORIDA DEPARTMENT OF REVENUE, et al., Appellant,
v.
CANAVERAL PORT AUTHORITY, Appellee.
No. 93-2422.
District Court of Appeal of Florida, Fifth District.
August 19, 1994.
Rehearing Denied October 7, 1994.
*1098 Robert A. Butterworth, Atty. Gen., Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Tallahassee, for appellant, Florida Dept. of Revenue.
Joe Caruso, Merritt Island, for appellant, Brevard County Property Appraiser.
Frank J. Griffith, Titusville, for appellant, Brevard County Tax Collector.
Harold T. Bistline, Patricia K. Olney, of Stromire, Bistline, Miniclier & McDermott, Cocoa, for appellee.
GRIFFIN, Judge.
This is an appeal of a final judgment entered in a non-jury action finding that Canaveral Port Authority ("CPA"), the plaintiff below, was immune from ad valorem[1] taxation by Brevard County. Although we commend the lower court's careful consideration of this issue, we are bound to conclude that CPA is not immune and reverse.
CPA is a "body politic and a body corporate" created by special act of the legislature in 1953 for the purpose of operating a port or harbor in Brevard County, Florida. Ch. 28922, Art. II s. 1, Sp.Acts. (1953). It is also an "independent special district" as that term is defined under section 189.403(3), Florida Statutes (1991).[2]
In 1992, Brevard County's property appraiser, Jim Ford, assessed ad valorem taxes on real property owned by CPA that was leased to nongovernmental lessees who allegedly were not performing a governmental or other exempt function.[3] The lands involved in the assessments were being used as warehouses, gas stations, deli restaurants, fish markets, charter boat sites and offices. The assessments were made under the authority of section 196.199(4), Florida Statutes (1991):
Property owned by any municipality, agency, authority or other public body corporate of the state which becomes subject to a leasehold interest or other possessory interest of a non-governmental lessee other than that described in paragraph (2)(a), after April 14, 1976, shall be subject to ad valorem taxation unless the lessee is an organization which uses the property exclusively for literary, scientific, religious, or charitable purposes.
CPA challenged the assessment by filing suit pursuant to section 194.171, Florida Statutes (1991), against Brevard County's property appraiser and tax collector. The Florida Department of Revenue was also named as a defendant in the action. See § 194.181(5), Fla. Stat. (1991). In its complaint, CPA alleged that it was a political subdivision of the state and was therefore immune from taxation. Alternatively, CPA contended that it was exempt from taxation under section 315.11, Florida Statutes (1991).[4]
After the non-jury trial, the court ruled that CPA was immune from taxation in that it was more in the nature of a county than a municipality. In so holding, the court found:
Although the Canaveral Port District is established with boundaries only within *1099 Brevard County, Florida, the Canaveral Port Authority serves and economically benefits more than the immediate area of Brevard County in which it is situated. The port at issue is the only port in east central Florida. The port's economic impact extends throughout the Central Florida region. The port exported 90 percent of all the citrus exported internationally out of Florida in this last citrus season and is essential for the movement of other physical goods in and out of the central Florida area as well. The cruise industry located at the port generates economic activity in excess of two hundred million dollars for the Central Florida region. The port serves as Central Florida's international gateway to international commerce. The port's activity benefits the nation's space program and supports national defense. The port is designated as a foreign trade zone. It is a legal port of entry, a customs port. Testimony also indicated that the port was not governed by Brevard County ordinances. It may levy Ad Valorem taxes to support it on properties located from the north end of Brevard County to below the middle of the County (Titusville, Coca, Merritt Island etc.). There are no residents within the enclave of the Port itself and the CPA has no authority over the landowners within the taxing district other than to levy and collect ad valorem taxes.
The threshold issue is whether the CPA is a "political subdivision" of the state. If so, it is immune from taxation, since the state and its political subdivisions have an "inherent sovereign immunity" from taxation,[5] which "is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government." State ex rel. Charlotte County v. Alford, 107 So.2d 27, 29 (Fla. 1958).
The determination that the state and its political subdivisions are immune from taxation was identified in case law and the test of whether a particular entity is a political subdivision of the state also derives from case law. Although the constitution provides that "[t]he state shall be divided by law into political subdivisions called counties," Art. VIII, § 1(a), Fla. Const. (1968),[6] it appears that Florida has "political subdivisions" other than counties which are immune from taxation.
In finding that the CPA was a "political subdivision" of the state, the trial court relied primarily on Sarasota-Manatee Airport Authority v. Mikos, 605 So.2d 132 (Fla. 2d DCA 1992), review denied, 617 So.2d 320 (Fla. 1993). There the court considered whether the Sarasota-Manatee Airport Authority ("SMAA") was immune from ad valorem taxation on its fee simple interest in property which had ceased to be used for exempt public or governmental purposes. In finding that the SMAA was immune from taxation, the court stated:
Our examination of the legislative enactments creating the SMAA leads us to conclude that it is a political subdivision of the state, more in the nature of a county than of a municipality, and is therefore immune from taxation. The SMAA is a bi-county governmental agency created by special act of the Florida legislature, chapter 31263, Laws of Florida (1955), and revised by chapter 91-358, section 18, Laws of Florida. In chapter 91-358, section 18, the legislature designated the SMAA a political subdivision within the meaning of government property tax exemptions granted under section 196.199, Florida Statutes. The record reflects that SMAA is an independent special district as defined by section 189.403, Florida Statutes (1991), and has been identified as such by the Florida Department of Community Affairs, pursuant to section 189.4035, Florida Statutes (1991). Special districts that are created as political subdivisions of the state enjoy the same immunity from taxation as does the state. See Andrews v. Pal-Mar Water *1100 Control Dist., 388 So.2d 4 (Fla. 4th DCA 1980), rev. den., 392 So.2d 1371 (Fla. 1980).[7]
Id. at 133. Given its conclusion that SMAA was a political subdivision of the state, the court found section 196.199, which applies to municipalities, agencies, authorities and other public bodies corporate, to be inapplicable.
Sarasota-Manatee differs from the case before us in that the legislature had expressly designated the SMAA as a "political subdivision." We need not debate whether the legislature can create, or designate, the "political subdivisions" of the state that are embraced by the inherent sovereign immunity of the state, because in this case there is no such provision. The legislature has not expressly labeled the CPA a "political subdivision."[8] Rather, we must be guided by case law in deciding whether CPA is a "political subdivision."
It appears the question whether an authority is a political subdivision of the state depends on whether the entity claiming immunity acts as a branch of general administration of the policy of the state. In Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968), the court considered whether real property owned by the Hillsborough County Aviation Authority was immune from taxation, or only exempt from taxation. In finding that the authority was not immune from taxation, the court stated:
1. Real property owned by the Plaintiff, Hillsborough County Aviation Authority, is exempt from ad valorem taxation. Section 5, Chapter 24579, Laws of Florida, 1947. Such property is not immune from taxation, however, since the aviation authority, unlike a county, is not a political division or subdivision of the state. E.g., Broward County Port Authority vs. Arundel Corp., 206 F.2d 220 (5th Cir.1953); Aerovias Interamericanas De Panama vs. Board of County Commissioners of Dade County, 197 F. Supp. 230 (S.D.Fla. 1961).
Id. at 194-195.
Broward County Port Authority v. Arundel, 206 F.2d 220 (5th Cir.1953), relied upon in Hillsborough County, concerned the question whether the port authority was subject to liability for interest upon indebtedness, or was immune from the payment of interest on its obligations as a political subdivision of the state. In finding that the port authority was not immune, the court stated:
Examination of the corporate nature of the Port Authority as outlined and prescribed in the Acts of the Florida Legislature incorporating it and its predecessors and defining its powers, functions, and duties, leads to the conclusion that Port Authority does not enjoy the immunity from the payment of interest on its obligations which a Florida county does vicariously as an agent of the state by virtue of its peculiar office as a branch of the general administration of the policy of the state. Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372 [Fla. 1916]. While the Port Authority has broad general powers, in *1101 some respects similar to those of a governmental subdivision, they are all directed and authorized to be exercised to the ultimate end of the development, maintenance and operation of a port, a business of a restricted nature, and it does not possess the usual incidents and powers of a governmental subdivision of the state. It is in effect a business corporation and the discharge of its functions, though amply authorized, is in the forwarding or carrying on of a proprietary function. The Port Authority is created by the Legislature and its future rights, privileges and obligations are subject to change or modification by that body. It is designated by the Legislature as a body politic and corporate and its existence and powers are at all times subject to the will of its creator, the Legislature. The Port Authority is not exactly similar to a municipal corporation such as a city or town, but it certainly ranks no higher in the scale of exemption from interest upon the payment of its obligations.
Id. 206 F.2d at 222-223 (footnotes omitted).
What makes an entity a political subdivision of the state entitled to immunity from taxation is its role as a branch of the general administration of the policy of the state. See Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 So. 339, 343 (Fla. 1895). Thus, Florida courts have recognized the immunity of state departments, agencies, and school boards, all of which are local arms of state government. See Dickinson v. City of Tallahassee, 325 So.2d 1, 2 (Fla. 1975).
It does not appear that the CPA was created as a "political subdivision" of the state entitled to share the state's immunity. The CPA was created as a "body politic and a body corporate," it was never referred to as a "political subdivision" of the state and it was originally granted an exemption from taxation:
All property, real and personal, tangible and intangible, now owned or hereinafter acquired and held by the Canaveral Port Authority, the governing authority of the Canaveral Port District, shall be exempt from all taxation levied and assessed pursuant to the Constitution and Laws of the State of Florida by any taxing unit.
Ch. 28922, Art. XII, § 1, Sp.Acts (1947). This act was repealed by Chapter 71-133 s. 14, Laws of Florida, which provided that "[a]ll special and local acts or general acts of local applications granting specific exemption from property taxation are hereby repealed to the extent such exemption is granted." See generally Straughn v. Camp, 293 So.2d 689 (Fla.), appeal dismissed, 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1974); Ocean Highway and Port Auth. v. Page, 609 So.2d 84 (Fla. 1st DCA 1992). Nor is the CPA part of a centralized, statewide system of port management and operation. Rather, it is an entity which was created to "construct, operate and maintain in the Canaveral Port District a deep-water port, harbor and facilities." Ch. 28922, Sp.Acts (1953). It is not acting as an agent of the state, but was created by special act to carry out a limited purpose. See also § 189.403(1), Fla. Stat. (1991) ("`Special district' means a local unit of special-purpose, as opposed to general-purpose, government within a limited boundary ....").[9] It is not a political subdivision of the state, regardless of its importance to the state. See also First Union Nat'l Bank of Florida v. Ford, 636 So.2d 523, 526 (Fla. 5th DCA 1993) (stating in dictum that a port authority created by special act was not a political subdivision of state);[10]Ocean Highway, 609 So.2d 84 (finding port authority was not exempt from ad valorem taxation by Nassau County on improvements it had constructed on land it leased from three private corporations, but never expressly considering whether authority was immune from *1102 taxation). Given the nature of the CPA, it is not a political subdivision which is immune from taxation.[11]
The CPA's alternative argument is that it is nevertheless exempt. Their claim of exemption concerns the relationship between sections 196.199(4) and 315.11, Florida Statutes (1991). Appellants contend that section 196.199(4) makes the CPA's leased real property taxable to the extent that it is leased to non-governmental lessees who are not using the property "exclusively for literary, scientific, religious, or charitable purposes." CPA contends that, despite the provisions of section 196.199(4), it is nonetheless exempt from taxation under section 315.11,[12] which provides as follows:
As adequate port facilities are essential to the welfare of the inhabitants and the industrial and commercial development of the area within or served by the unit, and as the exercise of the powers conferred by this law to effect such purposes constitute the performance of proper public and governmental functions, and as such [port facilities] constitute public property and are used for public purposes, the unit shall not be required to pay any state, county, municipal or other taxes or assessments thereon, whether located within or without the territorial boundaries of the unit, or upon the income therefrom, and any bonds issued under the provisions of this law, their transfer and income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the state. The exemption granted by this section shall not be applicable to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owed by corporations.
No case was found that interprets the scope of the exemption afforded by section 315.11 or the effect of enactment of section 196.199 on section 315.11. According to appellants, the enactment of section 196.199 has "limited" the general exemption contained in section 315.11. CPA asserts there is no limitation and that section 315.11 provides a blanket exception for CPA property.[13] Although we might use the word "harmony," rather than "limitation," to describe the relationship between 196.199 and 315.11, appellants appear to be correct that CPA property is exempt only to the extent of its governmental or public use.[14] We cannot agree that use does not matter, especially in light of the fact that exemptions are to be strictly construed against the taxpayer. Straughn, 293 So.2d at 695. Section 315.11 even speaks of "public property" "used for public purposes."
"Port facilities," referenced in section 315.11, are defined in the statute to include:
harbor, shipping and port facilities, and improvements of every kind, nature, and description, including, but without limitation, channels, turning basins, jetties, breakwaters, public landings, wharves, docks, markets, parks, recreational facilities, structures, buildings, piers, storage facilities, public buildings and plazas, anchorages, utilities, bridges, tunnels, roads, causeways, and any and all property and *1103 facilities necessary or useful in connection with the foregoing, and any one or more or any combination thereof and any extension, addition, betterment or improvement of any thereof.
§ 315.02(6), Fla. Stat. (1991). The legislature has defined the term "port facilities" broadly, but not, we think, so broadly as to embrace property on which commercial activity is being carried on by private lessees at the port facility. All of the enumerated examples in section 315.11 are of the same general kind or class and appear directly related to the basic operation of a port, including the movement of cargo. The only possibly stray terms are "market" and "recreational facilities." "Market," however, in this context likely relates to a location for trade in bulk commodities, not a 7-11. "Recreational facilities" likely means a park with picnic tables and a place to shoot hoops, not a video parlor. Here the exemption provided appears to be limited to property which is somehow used in direct connection with port business i.e. governmental functions), not private enterprises that derive from port business, even if those businesses complement the facilities of the port authority. See Volusia County v. Daytona Beach Racing and Rec. Fac. Dist., 341 So.2d 498 (Fla.), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977). Although "governmental" functions carried out by private entities at Port Canaveral might be interpreted more broadly than in other contexts lacking the specificity of section 315.11, that issue is not before us.
REVERSED and REMANDED.
HARRIS, C.J., and COBB, J., concur.
NOTES
[1] "`Ad valorem tax' means a tax based upon the assessed value of the property. The term `property tax' may be used interchangeably with the term `ad valorem tax.'" § 192.001, Fla. Stat. (1991).
[2] Chapter 189 established reporting requirements, and requirements for the creation and dissolution of "special districts."
[3] This appears to be the first time the property appraiser had attempted to assess such taxes. Prior to this time, the lessees had been required to pay ad valorem taxes on buildings and improvements they had constructed on the property, but the CPA had not been assessed ad valorem taxes on the land.
[4] See text accompanying n. 12 infra.
[5] Dickinson v. City of Tallahassee, 325 So.2d 1, 3 (Fla. 1975).
[6] See also the definition of "political subdivision" contained in the Florida Statutes, which also does not control the question of immunity. See § 1.01(8), Fla. Stat. (1991).
[7] In Andrews, cited by the Sarasota-Manatee court, the Pal-Mar Water Control District was held to be a political subdivision of the state and was therefore entitled to a refund of ad valorem taxes paid under protest, despite prior authority indicating no immunity. See Sugar Bowl Drainage Dist. v. Miller, 120 Fla. 436, 162 So. 707 (1935) (lands of water drainage district not used for public purposes are not exempt from taxation). In so holding, the Andrews court cited chapter 298 of the Florida Statutes (1975). The court also relied on a 1976 opinion by the attorney general which had concluded that water management districts were both immune from taxation and exempt from taxation. See Op.Atty. Gen. 76-87 (April 8, 1976). The attorney general's determination that water control districts were immune from taxation rested on a revenue ruling which provided that "[a] political subdivision of the state shall include the following: county authorities, and agencies and instrumentalities of the state or county." Fla. Admin. Code R. 12B-1.207. Utilizing case law pertaining to water districts, the attorney general concluded that water districts were instrumentalities of the state within the meaning of the revenue ruling. This rule has since been repealed and would not, in any event, appear to control the question whether any particular entity was immune from taxation.
[8] The act creating the SMAA provided: "Tax Exemption.  (1) The authority as a public body corporate is deemed a political subdivision within the meaning of the exemption granted under section 196.199, Florida Statutes." Since section 196.199 does not reference "political subdivision," it appears that the legislature may have misspoken, confusing "exemption" and "immunity."
[9] CPA's argument based on Eldred v. North Broward Hospital District, 498 So.2d 911 (Fla. 1986), that the 1968 Constitution somehow made special taxing districts "political subdivisions" does not persuade. The carrying out of an important specialized public purpose at the direction and pleasure of the legislature, see North Brevard County Hosp. Dist. v. Roberts, 585 So.2d 1110, 1112 n. 4 (Fla. 5th DCA 1991) does not make the entity a "political subdivision."
[10] Union Nat'l Bank is not, however, controlling since it involved the immunity from taxation of property equitably held by a county.
[11] Because we conclude that the CPA is not immune from taxation, we need not decide the taxing authorities' alternative argument that the legislature has waived immunity for its political subdivisions by enactment of section 196.199, Florida Statutes. Without agreeing that the legislature has that power, based on the limited authority that may be found in Alford and Dickinson, we remark only that if the legislature intended a waiver of sovereign immunity from taxation, it chose extraordinarily oblique language to accomplish the purpose. The legislature has shown it knows how to express its intent to waive sovereign immunity. § 768.28, Fla. Stat. (1993). See Dickinson, 325 So.2d at 3-4. On the other hand, unless the Department of Revenue is correct, the authority for many of the Chapter 196 exceptions is unclear. This confusion of exemption and immunity appears to be of long standing in Florida. See Alford, 107 So.2d at 29.
[12] Section 315.11 was enacted in 1959 and was last amended in 1973.
[13] Our consideration of this issue is simplified by the CPA's stipulation below that the property in issue is claimed to be exempt without regard to governmental, literary, scientific, religious or charitable use.
[14] Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla. 1994).