The Honorable Jim Ford Brevard County Property Appraiser Post Office Box 541271 Merritt Island, Florida 32954-1271
Dear Mr. Ford:
You ask substantially the following questions:
1. Does a community development district, created pursuant to chapter 190, Florida Statutes, constitute a "political subdivision" for purposes of section 196.199, Florida Statutes, such that the real property of the district, consisting of a golf course, pro shop, grill and maintenance building, is exempt from ad valorem taxation?
2. If an exemption applies, must an annual application for exemption from ad valorem taxation be filed pursuant to s.196.011, Florida Statutes?
3. If an exemption applies, is the tax exempt status of the recreational facilities impacted if access and/or fees charged were favorable to residents of the community development district?
In sum:
1. A community development district, created pursuant to chapter 190, Florida Statutes, does not constitute a "political subdivision" for purposes of section 196.199, Florida Statutes, and accordingly, in the absence of an exemption, the golf course and related structures owned and operated by the district would not appear to be exempt from ad valorem taxation.
2 and 3. In light of the response to Question One, it is unnecessary to address the issues raised in your second and third questions.
While the ultimate decision to grant an exemption in this matter lies with the property appraiser[1] or, upon appeal, the value adjustment board,[2] the following comments are offered in an effort to be of assistance.
The community development district in question, Viera East Community Development District (district), was created by administrative rule of the Florida Land and Water Adjudicatory Commission pursuant to chapter 190, Florida Statutes.[3] The district adopted a master plan for recreational facilities, which was approved by both the City of Rockledge and Brevard County by resolution.[4]
The golf course and related facilities were financed by the district's bond issue to be repaid through a pledge of assessments, recreation fees, and certain net revenues of the golf course, which proposal was approved by circuit court order. The district built the golf course on land it owns and does not lease any portion to another party. It also operates and performs normal maintenance on the property using its own employees. The golf course is open to the public but apparently gives preference for tee time and reservations to district residents. Green fees are higher for nonresidents, but upon payment of the $750 recreation fee assessed resident units within the district, a nonresident can receive the same treatment afforded residents.[5]
QUESTION ONE
Section 196.001, Florida Statutes, provides for the taxation of all real and personal property in this state unless specifically exempted. It appears from the materials submitted to this office that the district claims it is a "political subdivision" as that term is used in section 196.199(1)(c) and thus subject to the exemption afforded by that statute. Section 196.199(1)(c) provides in pertinent part:
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * *
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for a governmental, municipal, or public purposes, shall be exempt from ad valorem taxation, except as otherwise provided by law. (e.s.)
While there has been a dispute among several district courts of appeal regarding what constitutes a "political subdivision" for purposes of section 196.199, Florida Statutes,[6] the Fifth District Court of Appeal, within whose jurisdiction your county is located, has stated that the question of whether an authority is a political subdivision of the state depends on whether the governmental entity claiming immunity acts "as a branch of general administration of the policy of the state."[7]
In Department of Revenue v. Canaveral Port Authority,[8] the Fifth District Court of Appeal considered whether a port authority, created by special act of the Legislature as a "body politic and a body corporate," was a political subdivision immune from taxation. Unlike the airport authority considered by the Second District Court of Appeal in Sarasota-Manatee Airport Authority v. Mikos,[9]
holding that the airport authority was immune from ad valorem taxation since its enabling legislation specifically referred to the authority as a political subdivision of the state, the special act creating the port authority did not designate the port as a "political subdivision." The court determined that the port authority was not a part of the centralized, statewide system of port management and operation but rather was an entity created to construct and operate a deep-water port, harbor, and facilities within the port district.
Thus, the port authority was not acting as an agent of the state but was created by special act to carry out a limited purpose. Accordingly, the Fifth District Court of Appeal held that the port authority was not a political subdivision entitled to share in the state's immunity from taxation. The decision of the Fifth District Court of Appeal is currently before the Supreme Court of Florida on review.
Chapter 190, Florida Statutes, provides for the creation of community redevelopment districts as local units of special purpose government.[10] Such districts perform a limited purpose and do not exercise general governmental functions.[11] Rather such districts "are a legitimate alternative method available for use by the private and public sectors, as authorized by state law, to manage and finance basic services for community developments."[12]
Accordingly, under the rationale of Canaveral Port Authority, supra, such a limited purpose district does not constitute a "political subdivision" for purposes of section 196.199, Florida Statutes. Nor does the district appear to qualify for an exemption under the other provisions of section 196.199, Florida Statutes. It is not a "municipality" or an entity "created by general or special law and composed entirely of governmental agencies." Similarly, an examination of the other provisions of chapter 196, Florida Statutes, failed to reveal any provision that would exempt such property from ad valorem taxation. Nor does chapter 190, Florida Statutes, confer any tax immunity or special status on property held by a community development district.[13]
While section 190.021(6), Florida Statutes, creates a limited tax exemption for certain revenues received by a community development district, such provisions are not applicable to the instant inquiry.[14]
Until this issue is resolved by the Supreme Court of Florida and inasmuch as the community development district is located within the jurisdiction of the Fifth District Court of Appeal, I am of the opinion that a community development district, created pursuant to chapter 190, Florida Statutes, does not constitute a "political subdivision" for purposes of section 196.199, Florida Statutes, and, therefore, in the absence of an exemption, the golf course and related structures owned and operated by the district would not appear to be exempt from ad valorem taxation.
QUESTIONS TWO AND THREE
In light of the response to Question One, it is unnecessary to address the issues raised in your second and third questions.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 196.193, Fla. Stat.
[2] Section 196.194, Fla. Stat.
[3] See, Rule 42M-1, F.A.C.
[4] See, s. 190.012(2), Fla. Stat., stating that the district, after obtaining the consent of the local general-purpose govern-ment within the jurisdiction in which the power is to be exercised, may construct, operate, and maintain facilities for, among others, parks and facilities for indoor and outdoor recreational, cultural and educational uses.
[5] See, s. 190.035, Florida Statutes, prescribing the procedures for a community development district to establish fees, rentals and charges.
[6] See, Department of Revenue v. Canaveral Port Authority,642 So.2d 1097, 1100 (Fla. 5th DCA 1994), review pending, Case No. 84,743 (Fla. Feb. 16, 1995) (port authority not "political subdivision"); Walden v. Hillsborough County Aviation Authority,375 So.2d 283 (Fla. 1979) (aviation authority not political subdivision for purposes of immunity from taxation); Broward County Port Authority v. Arundel Corp., 206 F.2d 220 (5th Cir. 1953); Sugar Bowl Drainage District v. Miller, 162 So. 707 (Fla. 1935); contra, Sarasota-Manatee Airport Authority v. Mikos,605 So.2d 132 (Fla. 2d DCA 1992) (airport authority is political subdivision for purposes of immunity from taxation); Andrews v. Pal-Mar Water Control District, 388 So.2d 4 (Fla. 4th DCA 1980) rev. denied, 392 So.2d 1371 (Fla. 1980).
[7] Department of Revenue v. Canaveral Port Authority, supra at 1100.
[8] 642 So.2d 1097, 1100 (Fla. 5th DCA 1994), review pending, Case No. 84,743 (Fla. Feb. 16, 1995).
[9] 605 So.2d 132 (Fla. 2d DCA 1992), review denied,617 So.2d 320 (Fla. 1993).
[10] See, s. 190.003(6), Fla. Stat., defining "community development district" as "a local unit of special-purpose government which is created pursuant to this act and limited to the performance of those specialized functions authorized by this act. . . ."
[11] See generally, State v. Frontier Acres Community Development District, 472 So.2d 455 (Fla. 1985) (community development district is a special purpose rather than general-purpose unit of government).
[12] Section 190.002(2)(b), Fla. Stat.
[13] Compare, s, 196.192, Fla. Stat., which provides an exemption for property owned by an exempt entity and used for exempt purposes; s. 196.012(1), Fla. Stat., defining "exempt use of property" or "use of property for exempt purposes" to mean "predominant or exclusive use of property owned by an exempt entity for educational, literary, scientific, religious, charitable, or governmental purposes . . ."; and s. 196.012(6), Fla. Stat. And see, s. 196. 2001, Fla. Stat., creating an exemption for certain not-for-profit sewer and water companies.
[14] See, s. 190.021(6), Fla. Stat., providing:
All bonds issued hereunder and interest paid thereon and all fees, charges, and other revenues derived by the district from the projects provided by this act are exempt from all taxes by the state or by any political subdivision agency, or instrumentality thereof; however, any interest, income, or profits on debt obligations issued hereunder are not exempt from the tax imposed by chapter 220. Further, districts are not exempt from the provisions of chapter 212.