690 So.2d 1226 (1996)
CANAVERAL PORT AUTHORITY, Petitioner,
v.
DEPARTMENT OF REVENUE, et al., Respondents.
No. 84743.
Supreme Court of Florida.
December 5, 1996.
Rehearing Denied March 27, 1997.
Harold T. Bistline and Patricia K. Olney of Stromire, Bistline, Miniclier, McDermott & Griffith, Cocoa, for Petitioner.
Robert A. Butterworth, Attorney General and Joseph C. Mellichamp, III, Senior Assistant Attorney General, Tallahassee; and Joe Teague Caruso of the Law Office of Caruso & Seropian, P.A., Merritt Island, for Respondents.
Robert K. Robinson and John C. Dent, Jr. of Dent & Cook, P.A., Sarasota, for John W. Mikos, Property Appraiser of Sarasota County, Florida, amicus curiae.
*1227 Richard A. Harrison and Stewart C. Eggert of Allen, Dell, Frank & Trinkle, Tampa, for Hillsborough County Aviation Authority, amicus curiae.
Jon M. Wilson, Mark C. Extein and LiLi C. Metcalf of Foley & Lardner, Orlando, for the Greater Orlando Aviation Authority, amicus curiae.
John J. Copelan, Jr., County Attorney and Pamela M. Kane, Assistant County Attorney, Fort Lauderdale, for Broward County, a political subdivision of the State of Florida and Successor in Interest to Port Everglades Authority, amicus curiae.
Larry E. Levy and Loren E. Levy of the Law Offices of Larry E. Levy, Tallahassee, for John R. Jones, Escambia County Property Appraiser, amicus curiae.
Charles D. Bailey, Jr. of Williams, Parker, Harrison, Dietz & Getzen, Sarasota; and Benjamin K. Phipps of the Phipps Firm, Tallahassee, for Sarasota-Manatee Airport Authority, amicus curiae.

REVISED OPINION
WELLS, Justice.
We have for review Florida Department of Revenue v. Canaveral Port Authority, 642 So.2d 1097 (Fla. 5th DCA 1994), which expressly and directly conflicts with the opinion in Sarasota-Manatee Airport Authority v. Mikos, 605 So.2d 132 (Fla. 2d DCA 1992), review denied, 617 So.2d 320 (Fla.1993). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Canaveral Port Authority (CPA) filed suit challenging Brevard County's authority to assess ad valorem taxes pursuant to section 196.199(4), Florida Statutes (1991), on the fee interest of real property owned by CPA and leased to private entities engaged in nongovernmental activities.[1] Specifically, the leased properties were being used as warehouses, gas stations, deli restaurants, fish markets, charter boat sites, and docks. CPA alleged that it was immune from taxation because it was a political subdivision, or in the alternative, it was exempt from taxation pursuant to section 315.11, Florida Statutes (1991). After a nonjury trial, the trial court found in accord with Sarasota-Manatee that CPA was a political subdivision of the state and thus was immune from ad valorem taxation.
The Fifth District reversed. The court declined to address whether the legislature can create political subdivisions because, unlike the port authority at issue in Sarasota-Manatee, the legislature had not designated CPA a political subdivision. Canaveral, 642 So.2d at 1100. Instead, the court looked to case law and found that CPA was not a political subdivision because it did not act as a branch of general administration of the policy of the state. Id. at 1100-01. The district court further held that the CPA property at issue was not exempt from taxation because it was not used in direct connection with port business. Id. at 1102.
We approve the Fifth District's decision holding that CPA's fee-simple interest in property is not immune from ad valorem taxation. We do so based upon our conclusion that immunity from ad valorem taxation, which this Court has recognized as necessary to the proper functioning of state government,[2] must be kept within narrow bounds. In Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla.1975), this Court acknowledged that the State's immunity was necessitated by the compelling policy reasons of fiscal management and constitutional homogenization. Id. at 4. We further stated:
[I]t is inconsistent with sound governmental principles to suggest that a State which cannot finance itself on a deficit basis would indirectly authorize an indeterminate amount of revenue to be taken from all its citizens for the benefit of some of its municipal governments.
Id. (footnote omitted). The compelling policy reasons specified in Dickinson continue to exist with regard to the State. However, the *1228 reasons become less than compelling when what comprises "the state" is expanded beyond the entities collectively referred to as "the State" in Dickinson.[3]
Accordingly, we find that only the State and those entities which are expressly recognized in the Florida Constitution as performing a function of the state comprise "the state" for purposes of immunity from ad valorem taxation. What comprises "the state" is thus limited to counties,[4] entities providing the public system of education,[5] and agencies, departments, or branches of state government that perform the administration of the state government.[6] CPA is not such an entity and therefore is not immune from ad valorem taxation. See Hillsborough County Aviation Authority v. Walden, 210 So.2d 193, 194-95 (Fla.1968).
We reject the Second District's holding in Sarasota-Manatee that classification as a political subdivision and, consequently, immunity from ad valorem taxation is dependent upon whether an entity is more like a county than a municipality. We recognize the confusion on this issue may have arisen because of cases that have stated that "[t]he state and its political subdivisions, like a county, are immune from taxation since there is no power to tax them." Dickinson, 325 So.2d at 3 (emphasis added) (quoting Orlando Utilities Comm'n v. Milligan, 229 So.2d 262, 264 (Fla. 4th DCA 1969), cert. denied, 237 So.2d 539 (Fla.1970)); see also Hillsborough County, 210 So.2d at 194-95; Orange County Fla. v. Florida Dep't of Revenue, 605 So.2d 1333, 1334 (Fla. 5th DCA 1992), approved, 620 So.2d 991 (Fla.1993). We herein clarify that immunity does not flow from a judicial determination that an entity is "like a county."
We also reject the Second District's analysis in Sarasota-Manatee recognizing the Sarasota-Manatee Airport Authority as a "political subdivision" in part because the legislature designated it as such. 605 So.2d at 133. The Florida Constitution does not empower the legislature to designate what entities are immune from ad valorem taxation. See Orange County, 605 So.2d at 1334.
Because CPA is not immune from ad valorem taxation, we address CPA's alternative argument that it is exempt from ad valorem taxation pursuant to section 315.11, Florida Statutes (1991).[7] Section 315.11, which was passed in 1959, provides a statutory exemption from various state and local taxes for port authorities including port authority property.[8] This section has never made the exemption it provides dependent on the use of port authority property.
*1229 Respondent contends that sections 196.001 and 196.199, Florida Statutes (1991), supersede section 315.11 and make CPA's leased property taxable to the extent the property is leased to nongovernmental entities for nongovernmental uses. Section 196.001 provides that all property is subject to taxation unless expressly exempted.[9] Section 196.199 establishes the exemptions that apply to property owned by CPA and leased to nongovernmental entities. These statutes were adopted by the legislature in 1971. Ch. 71-133, Laws of Fla. In the same act, the legislature repealed an exemption in CPA's enabling legislation which was similar to the exemption provided by section 315.11.[10] Although the legislature did not expressly repeal the exemption provided by section 315.11, we find that by passing chapter 71-133, it imposed a limitation on that exemption. In view of the express language used in sections 196.001, 196.199(2), and 196.199(4), particularly the term "authorities," we conclude that the legislature intended to provide only a limited exemption for fee interests in port authority property. Together, sections 196.001, 196.199(2), and 196.199(4) require ad valorem taxation of fee interests in property owned by an authority and subject to a lease by a nongovernmental lessee unless the lessee is serving a governmental, municipal, or public purpose or function as defined in section 196.012(6) or uses the property exclusively for a literary, scientific, religious, or charitable purpose. We therefore construe section 315.11 in conjunction with sections 196.001, 196.199(2), and 196.199(4), and hold that section 315.11 provides an exemption only when port authority property is being used for a purpose which is specifically set forth in section 196.199(2) and (4). If the property is being used for some purpose other than that provided for in section 196.199(2) and (4), then the fee interest will be subject to taxation.
Our construction of these statutes is consistent with this Court's earlier analysis of sections 196.001(2) and 196.199, Florida Statutes, in Williams v. Jones, 326 So.2d 425 (Fla.1975). There we stated:
The practical effect of Sections 196.001(2) and 196.199, Florida Statutes, is to withdraw exemption from certain users of property and to impose an ad valorem real property tax upon them consistent with the tax imposed upon persons who make similar uses of property.
Id. at 432. Furthermore, this construction gives effect to the policy consideration enunciated in Williams:
The operation of the commercial establishments represented by appellants' cases is purely proprietary and for profit. They are not governmental functions. If such a commercial establishment operated for profit in Panama City Beach, Miami Beach, Daytona Beach, or St. Petersburg Beach is not exempt from tax, then why should such an establishment operated for profit on Santa Rosa Island Beach be exempt? No rational basis exists for such a distinction.
Id. at 433. Similarly, no rational basis exists for exempting from ad valorem taxation a commercial establishment operated for profit on CPA property while a similar establishment located near, but not on, CPA property is not exempt.
Accordingly, we conclude that the fee interest in the property at issue is not exempt *1230 from ad valorem taxation because the property is leased to a nongovernmental entity for a nongovernmental use.[11] We approve the Fifth District's decision on both the immunity and exemption issues to the extent they are consistent with our opinion. We disapprove the Second District's decision in Sarasota-Manatee finding immune from ad valorem taxation the authority at issue in that case.
We do specifically and expressly point out that irrespective of the leases, the County cannot tax the property in excess of its total appraised value.
It is so ordered.
KOGAN, C.J., and GRIMES and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion, in which SHAW and ANSTEAD, JJ., concur.
OVERTON, Justice, dissenting.
I dissent.
The critical issue in this case is clear. We must decide whether there is constitutional authority for counties and school districts, as constitutional governmental entities, to directly tax special districts, also constitutional governmental entities, for property that the special districts own and lease for private purposes. We must remain cognizant that while the lessees might use the special district properties for nongovernmental purposes, the lease revenues are used by the special districts for public purposes. In simple terms, this type of taxation results in no net gain to the public. Instead, it simply transfers funds from the pockets of one set of taxpayers (those in special districts) to the pockets of another set of taxpayers (those in counties, school districts, and municipalities). As stated, the real issue is clear. We cannot, however, simply state the answer without tracing the constitutional underpinnings of local governmental taxation in Florida.
First, it must be completely understood that the Florida Constitution contemplates, and this Court has unanimously confirmed, that the State, its counties, and its school districts are immune from ad valorem taxation. Second, the constitution contemplates, and this Court has never disagreed, that special districts should be treated as co-equals with school districts and counties. Third, we need to avoid the temptation to analogize municipalities and special districts. There can be no doubt that the constitution expressly distinguishes municipalities from counties, school districts, and special districts. Fourth, we must develop a full awareness of the significant role played by special districts in the governance of this State. Finally, we must acknowledge that, if allowed, the type of intergovernmental taxation proposed here will, at best, have detrimental effects on special districts and, more probably, will write special districts out of our constitution. I find that, after reviewing these five historical and policy considerations, there can be no doubt that special districts are immune from ad valorem taxation.
I digress briefly, though, to emphasize one issue not raised by this case. We are not asked to alter any of our prior decisions relating to leasehold interests. There is no dispute that private lessees that use government property for nongovernmental purposes are subject to taxation on their leasehold interests. We must not confuse such taxation of leasehold interests with the direct taxation of special districts at issue here. In this case, the special district was directly assessed a tax on its property. This direct taxation is unprecedented. As the Fifth District Court of Appeal wrote in this case:
This appears to be the first time the property appraiser had attempted to assess such taxes. Prior to this time, the lessees had been required to pay ad valorem taxes on buildings and improvements they had constructed on the property, but *1231 the CPA had not been assessed ad valorem taxes on the land.
Florida Dep't of Revenue v. Canaveral Port Auth., 642 So.2d 1097, 1098 n. 3 (Fla. 5th DCA 1994). Florida has 922 special districts. These include fire districts, hospital districts, water districts, port authorities, and airport authorities. Accordingly, I think that the broad and substantial ramifications that will ensue from changing the status quo are unjustified.

Governmental Immunity from Taxation
In Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla.1975), this Court addressed the concept of intergovernmental taxation. The City of Tallahassee attempted to impose a utility tax upon "the State of Florida and its agencies and departments, on Leon County, and on the Leon County School Board." Id. at 2. We rejected such an effort. We stated that "[p]recedent and logic both dictate that the sovereign's general freedom from taxation derives from an `immunity', not from an `exemption'." Id. at 3. We then quoted with approval the observation that "[t]he state and its political subdivisions, like a county, are immune from taxation since there is no power to tax them." Id. The core policy rationale underlying this decision was that "broad grounds of fundamentals in government" dictate against governmental entities taxing each other when, instead, those entities should be cooperating to further the public interest. Id. We therefore found that the State, counties, and school districts were expressly immune from taxation. No special district was a party in the Dickinson case. The Department of Revenue and Brevard County now suggest, twenty-one years later, that the reasoning of Dickinson does not extend to special districts. They argue that special districts are not "like a county" and, therefore, do not represent a political subdivision of the State immune from taxation. Our constitution refutes this assertion.

Constitutional Similarity Between Counties, Special Districts and School Districts
It is significant that only four governmental entities have ad valorem taxing authority under our constitution. Those four entities are counties, special districts, school districts, and municipalities. The authority is contained in article VII, section 9(a), of the Florida Constitution, which reads as follows:

Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
(Emphasis added.) The constitution gives no indication that special districts should be treated differently than counties and school districts. In addition to the similar treatment accorded to these governmental entities in the section quoted above, the constitution expressly mentions special districts seventeen other times. Indeed, counties and special districts are mentioned in the very same sentence fourteen times. It is clear that the constitution envisions counties and school districts receiving equal treatment under the law. County lands, under Dickinson, cannot be taxed when they are leased for nongovernmental purposes. Special district properties should be treated the same. Some may suggest, however, that the constitution also mentions municipalities in the same sentence with counties and school districts multiple times. They then conclude that special districts could be treated in a manner similar to municipalities. This approach, though, fails to acknowledge that our constitution expressly sets municipalities apart from counties, school districts, and special districts.

Municipalities are Different
The relationship between municipalities and the other three governmental taxing entities (counties, school boards, and special districts) is different because the constitution grants municipalities an express exemption from taxation in article VII, section 3(a), which reads as follows:

All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required *1232 by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation.
(Emphasis added.) Municipalities are not immune from taxation. Therefore, the framers of the 1968 Florida Constitution had to expressly provide an exemption for municipal property used for municipal or public purposes. In fact, the constitution goes one step further. It provides that municipalities owning property outside their municipal limits may be forced, by general law, to make "payment" to the taxing unit in which the property is located. A "payment" is different from an ad valorem tax. In fact, this provision limits intergovernmental taxation by requiring the legislature to establish the method of payment.
Recently, we addressed the municipal exemption in the unique factual situation presented by Capital City Country Club, Inc. v. Tucker, 613 So.2d 448 (Fla.1993). In that case, Capital City Country Club leased 192 acres of land owned by the City of Tallahassee. The term of the lease was ninety-nine years. Rent of one dollar per year was paid to the City of Tallahassee. The lease contained a provision that required the club to be responsible for all ad valorem taxes levied against the property. The club conceded that the golf course was not being used for municipal or public purposes. We held that the golf course property was subject to real estate taxation and, by reason of its agreement with the city, the club was obligated to pay those taxes. We further rejected the club's contention that the imposition of real estate taxes on the land and the imposition of intangible taxes on the leasehold interest constituted double taxation. The Capital City case is inapposite here. Specifically, we limited Capital City by noting that "it is a municipality which owns the property rather than some other governmental entity." Id. at 450 (emphasis added).
In addition, I note that the City of Tallahassee was not a party in Capital City and the issue of taking city revenues to pay these taxes was not before the Court.
More importantly, though, the constitution does in fact treat municipalities differently. There is, however, no separate provision for special districts. In the absence of a separate provision, special districts should be viewed similarly to those governmental entities (counties and school districts) with which they repeatedly appear in the constitution. To do otherwise is to create an "ugly duckling" governmental taxing entity. Counties and school districts are immune. Municipalities are constitutionally exempt. Special districts would fall into a third category. Such a third category would be judicially created by this Court and would find no basis in the constitution. Special districts, governmental entities with important public responsibilities, should not be treated as "ugly ducklings."

The Important Public Functions Served by Special Districts
I reject the argument that special districts provide only a limited governmental function. I also reject the suggestion that Dickinson should apply only to counties, entities providing the public system of education, and agencies, departments, or branches of state government that perform the administration of state government. Such an approach has no constitutional support.
Special districts have been given very substantial governmental responsibilities. It is special districts that manage the State's water supply. Further, special districts are involved in transportation, health care, and public safety matters. The constitution recognizes the importance of special districts by granting them the following rights and responsibilities. Special districts may have ad valorem taxing authority. Art. VII, § 9, Fla. Const.[12] Special districts are considered to be local governmental entities in matters concerning the transfer of powers and functions among such entities. Art. VII, § 4, *1233 Fla. Const. Special districts may issue revenue bonds to finance port facilities that are payable "solely from the revenue derived from the sale, operation, or leasing of the projects." Art. VII, § 10, Fla. Const. Special districts may issue bonds payable from ad valorem taxation. Art. VII, § 12, Fla. Const. Special districts are authorized to establish civil service systems. Art. III, § 14, Fla. Const. Finally, special districts must comply with the dictates of the public records and meetings provisions. Art. I, § 24, Fla. Const.
Not only does the constitution give special districts important rights and responsibilities; but, indeed, this Court has also found that special districts are important governmental entities. For instance, special districts are entitled to sovereign immunity under the provisions of section 768.28, Florida Statutes (1995). Eldred v. North Broward Hosp. Dist., 498 So.2d 911 (Fla.1986)(special districts called "independent establishments of the state"). The employee records of special districts are subject to the Florida Public Records Act. Michel v. Douglas, 464 So.2d 545 (Fla.1985). Special districts are subject to the Public Employees Relations Act. See National Union v. Southeast Volusia Hosp. Dist., 436 So.2d 294 (Fla. 1st DCA 1983); Southeast Volusia Hosp. Dist. v. National Union of Hosp. & Health Care Employees, 429 So.2d 1232 (Fla. 5th DCA 1983), review dismissed, 452 So.2d 568 (Fla.1984); Hitt v. North Broward Hosp. Dist., 387 So.2d 482 (Fla. 4th DCA 1980). Finally, special districts are subject to the government-in-the-sunshine law. News-Press Publishing Co. v. Carlson, 410 So.2d 546 (Fla. 2d DCA 1982).
In light of the crucial duties and responsibilities held by special districts, it makes no sense to unduly burden the taxpayers in these districts by judicially stripping the districts of their immunity. The public policy ramifications of such a stripping would undoubtedly be significant.

Public Policy Ramifications
If we allow counties, school districts, and municipalities to tax special districts, four negative public policy ramifications will ensue. First, the taxpayers of special districts will be denied the benefits of their bargain. A special district with ad valorem taxing authority must have its millage rate authorized by law and then have that tax approved by a vote of those electors who are holders of freeholds within the special district not wholly exempt from taxation. Art. VII, § 9(b), Fla. Const. The creation of a special district, therefore, is similar to the creation of a contract. The voters approve a certain millage rate with the expectation that a certain level of services will be provided through the tax revenues generated. The special district's budget is constructed based upon projected revenues. If the unprecedented tax at issue in this case is approved, special districts will undoubtedly experience a budget shortfall. Special district taxpayers will then receive either a reduced level of services or a request for increased taxes. Neither is fair.
Further, the type of taxation at issue deprives many special district taxpayers of input as to the expenditure of their taxes. Indeed, many of those taxpayers will receive no benefits from their taxes. This is because, in the case of multi-county special districts, the taxes will be largely paid by special district residents living outside the borders of the taxing entity.
Second, the Department of Revenue and Brevard County are concerned that the lessees in this case are using governmental property for nonpublic purposes. I reiterate that this view ignores the fact that the lease revenues are being used for the public purposes of the special district. It also ignores the fact that the constitution foresees and authorizes the use of leases by port authorities. Article VII, section 10, of the Florida Constitution reads, in relevant part, as follows:
Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership, or person; but this shall not prohibit laws authorizing:
. . . .
(c) the issuance and sale by any county, municipality, special district or other local *1234 governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when in either case, the revenue bonds are payable solely from revenue derived from the sale, operation, or leasing of the projects.

(Emphasis added.) There is no justification for taxing CPA simply because it has entered leases that are expressly authorized by the constitution.
Third, drawing a line of distinction between special districts and counties or school districts creates a constitutional caste system. Governmental entities treated the same in the text of the constitution should not, by whim, be given varying degrees of importance. Such an outcome is analogous to a judicial decision declaring that the executive branch of government has less importance than the judicial or legislative branches. There is no more constitutional support for a finding of inequality among governmental entities at issue in this proceeding than there would be for a determination of inequality among the three branches of government.
Fourth, the taxation at issue in this case, if allowed, will severely limit the use of special districts in Florida. This is not simply a prediction that "the sky is falling." Instead, it is well supported by the absurd scenario presented by the Broward County amicus brief. Broward County is a successor in interest to the Port Everglades Authority. It takes the position that the authority should be immune from taxation and thereby relieved of all liability for taxes that Broward County itself assessed for the years 1990 through 1994. This situation highlights the incongruous results that would be expected if special districts are stripped of their immunity. Indeed, Broward County makes the point that it is only concerned with those taxes assessed on property leased for nongovernmental purposes between 1990 and 1994. That same property, presumptively still leased for nongovernmental purposes, is now immune because it is owned by the county. This reenforces the view that special districts will become the "ugly ducklings" of governmental entities if stripped of their immunity. Many will likely transfer their powers to immune entities. It makes no sense whatsoever to create a system in which the Canaveral Port Authority is liable for taxes at its port for using property in the same way that Broward County uses its port property with immunity. Needless to say, the framers of the constitution certainly did not envision such an outcome.

Conclusion
Accordingly, for the reasons expressed, I dissent. This Court has no authority to destroy the constitutional concept of special districts in order that counties, school districts, and municipalities might divide the spoils derived solely by this judicial fiat. I would find that the taxpayers of the Canaveral Port Authority and other special districts are immune from this unjustified and inequitable intergovernmental taxation. Such taxation violates the core policy rationale upon which governmental immunity is based; that is, "broad grounds of fundamentals in government" dictate that governmental entities should not tax each other, but rather, they should cooperate to further the public interest. Dickinson, 325 So.2d at 3.
SHAW and ANSTEAD, JJ., concur.
NOTES
[1] As the district court noted, the lessees had been required to pay ad valorem taxes on buildings and improvements they had constructed on the property leased from CPA, but CPA had not been assessed ad valorem taxes on the land.
[2] See Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla.1975); State ex rel. Charlotte County v. Alford, 107 So.2d 27 (Fla.1958); Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla.1957).
[3] In Dickinson, the Court referred collectively to the State of Florida, its agencies and departments, Leon County, and the Leon County School Board as the state. 325 So.2d at 2.
[4] See Art. VIII, § 1, Fla. Const.
[5] See Art. IX, § 4, Fla. Const.
[6] We note that our holding differs from that of the Fifth District in that we find that what comprises the state for purposes of ad valorem tax immunity must have a basis in the Florida Constitution. The Fifth District's opinion holds only that what makes an entity a political subdivision entitled to immunity from taxation is its role as a branch of the general administration of the policy of the state. Canaveral, 642 So.2d at 1100-01. We quash the Fifth District's decision to the extent that it finds an entity may be a part of the state without any constitutional basis.
[7] Immunity and exemption differ in that immunity connotes an absence of the power to tax while exemption presupposes the existence of that power. Dickinson, 325 So.2d at 3; Orlando Utilities, 229 So.2d at 264.
[8] Section 315.11, Florida Statutes (1991), specifically provides:

As adequate port facilities are essential to the welfare of the inhabitants and the industrial and commercial development of the area within or served by the unit, and as the exercise of the powers conferred by this law to effect such purposes constitutes the performance of proper public and governmental functions, and as such port facilities constitute public property and are used for public purposes, the unit shall not be required to pay any state, county, municipal or other taxes or assessments thereon, whether located within or without the territorial boundaries of the unit, or upon the income therefrom, and any bonds issued under the provisions of this law, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the state. The exemption granted by this section shall not be applicable to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owned by corporations.
[9] Subdivision (1) provides for the taxation of all real and personal property. § 196.001, Fla.Stat. (1991). Subdivision (2) provides for the taxation of all leasehold interests in property owned by the United States, the state, or any political subdivision, municipality, agency, authority, or other public body corporate of the state. § 196.001 Fla.Stat. (1991).
[10] Chapter 28922, article XII, section 1, Laws of Florida (1953), the special act creating CPA, provides:

All property, real and personal, tangible and intangible, now owned or hereafter acquired and held by the Canaveral Port Authority, the governing authority of the Canaveral Port District, shall be exempt from all taxation levied and assessed pursuant to the Constitution and Laws of the State of Florida by any taxing unit.
In chapter 71-133, section 14, Laws of Florida, the legislature provided in part:
All special and local acts or general acts of local application granting specific exemption from property taxation are hereby repealed to the extent that such exemption is granted....
Consequently, the exemption granted CPA in its enabling legislation was repealed. See Straughn v. Camp, 293 So.2d 689 (Fla.1974).
[11] The parties agree that the uses of the property in this case were nongovernmental. If a dispute had arisen on this issue, the trial court would be required to resolve it as held by State Department of Revenue v. Port of Palm Beach District, 650 So.2d 700 (Fla. 4th DCA 1995), review granted, 659 So.2d 1088 (Fla.1995). The determination should be made in accord with our decision in Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla.1994); see also Williams, 326 So.2d at 432-33.
[12] The special district in this case, Canaveral Port Authority, actually does have such ad valorem taxing authority.