IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

September 25, 2019


| | | |
|---|---|---|
| GARY JOINER, successor to MIKE WELLS, Pasco County Property Appraiser, | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | Case No. 2D17-1040 |
| PINELLAS COUNTY, FLORIDA, and MIKE FASANO, as Pasco County Tax Collector, | ) ) ) ) | |
| Appellees. | ) ) | |
| _____ | ) | |

BY ORDER OF THE COURT.

Appellee, Pinellas County, Florida, has filed an "Alternative Motion for Rehearing, Rehearing En Banc, for Certification to the Supreme Court of Florida as an Issue of Great Public Importance, or for Clarification." We deny Appellee's requests for rehearing and rehearing en banc but grant the motions for clarification and certification. The prior opinion dated May 3, 2019, is accordingly withdrawn, and the attached opinion is issued in its place.

No further motions for rehearing will be entertained.


I HEREBY CERTIFY THE FOREGOING IS A TRUE
COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL, CLERK

GARY JOINER, successor to          )
MIKE WELLS, Pasco County           )
Property Appraiser,                )
                                   )
            Appellant,             )
                                   )
v.                                 )          Case No. 2D17-1040
                                   )
PINELLAS COUNTY, FLORIDA,          )
and MIKE FASANO, as Pasco          )
County Tax Collector,              )
                                   )
            Appellees.             )
_____    )

Opinion filed September 25, 2019.

Appeal from the Circuit Court for Pasco
County; Linda Babb, Judge.

Loren E. Levy of The Levy Law Firm,
Tallahassee, for Appellant.

Yvette Acosta MacMillan, Senior
Assistant County Attorney, Clearwater,
for Appellee Pinellas County, Florida,
a political subdivision of the State of
Florida.

Frederick T. Reeves of Frederick T.
Reeves P.A., New Port Richey, for
Appellee Mike Fasano, as Pasco
County Tax Collector.

ATKINSON, Judge.

The Pasco County Property Appraiser (Pasco Property Appraiser) appeals the entry of final summary judgment in favor of Pinellas County declaring the 12,400 acres of property it owns within Pasco County immune from ad valorem taxation. This case presents an issue of first impression: whether a county's immunity from taxation extends extraterritorially to property that it owns in another county. We conclude that it does not and reverse.

The 12,400 acres of real property, located entirely within Pasco County, consists of thirty-six parcels of land, collectively known as the Cross Bar Ranch and the A1 Bar Ranch (collectively, the Property). Pinellas County has paid ad valorem taxes on the Property since its acquisition in 1976 and 1989.[1]

In January 2014, a certified public accountant employed by the Division of Inspector General for the Pinellas County Clerk and Comptroller conducted an updated audit that suggested that some or all of the parcels of the Property may be exempt from taxation. In May 2015, Pinellas County filed suit against the Pasco Property Appraiser seeking declaratory and injunctive relief concerning Pinellas County's immunity from paying ad valorem taxes on the Property and reimbursement for Pinellas County's payments for 2014 through 2016. The parties filed cross motions for summary judgment on purely legal grounds. Pinellas County's motion was granted, and the Pasco Property Appraiser filed this appeal.

---

[1]In 1976, Pinellas County purchased some of the parcels located in the Cross Bar Ranch. It purchased some of the parcels comprising the A1 Bar Ranch in 1989.

This court reviews pure questions of law de novo. See Kirton v. Fields, 997 So. 2d 349, 352 (Fla. 2008); D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003). Resolution of the legal question here turns upon whether any property owned by a county, regardless of the property's geographic location, is immune from taxation or whether this immunity is confined to property that a county owns within its own borders.

In Park-N-Shop, Inc. v. Sparkman, 99 So. 2d 571 (Fla. 1957), the Florida Supreme Court held that ad valorem taxes could not be levied by the city and county against property owned by the county but leased to a private business, because the property of a county "is immune from taxation." Id. at 573.[2] The Pasco Property Appraiser argues that Park-N-Shop is distinguishable because its stated rationale—that the county should not assess taxes against its own land, pay the money to itself, then surcharge lessees for that amount—does not apply where a county is taxing a sister county. As such, it argues that a county's immunity from taxation does not apply in situations where one county is seeking such immunity of lands located outside of its jurisdictional boundaries. We agree.

The Pasco Property Appraiser contends that in the case of overlapping sovereignty, the sovereign acting outside of its territory must be treated as a private entity. Because the Property is within the jurisdictional boundaries of Pasco County, and subject to the authority of Pasco County as a result, the Pasco Property Appraiser

_____

[2]Although Park-N-Shop was decided under a prior version of the Florida Constitution, subsequent case law of the Florida Supreme Court suggests its ongoing validity. See Dickinson v. City of Tallahassee, 325 So. 2d 1, 3 n.6 (Fla. 1975) ("[Park-n-Shop] arose under a predecessor Florida Constitution. Nonetheless, [it is] controlling here since the principle of immunity is not constitutionally dependent."). However, other cases have opined that "immunity from taxation flows directly from the Constitution." Orange County v. Fla. Dep't of Revenue, 605 So. 2d 1333, 1334 (Fla. 5th DCA 1992).

- 3 -

argues that those lands are subject to taxation. The Pasco Property Appraiser commends the analogous reasoning of Georgia v. City of Chattanooga, 264 U.S. 472 (1924), in which the United States Supreme Court held that the State of Georgia, which had purchased land in Chattanooga, Tennessee, was not immune from condemnation of the lands by the city because land "acquired by one state in another state is held subject to the laws of the latter and to all the incidents of private ownership." Id. at 480.

The Pasco Property Appraiser also warns that extraterritorial application of immunity from taxation "would result in a skewed application of the doctrine and ultimately have unjust and impractical consequences." What if, the Pasco Property Appraiser queries, Pasco County purchases the Don CeSar hotel on St. Pete Beach in Pinellas County? It could operate a lucrative, for-profit enterprise, avoiding payment of ad valorem taxes to Pinellas County solely based upon its status as the property's owner. Not only would this deprive Pinellas County of substantial revenues, the Pasco Property Appraiser claims, but it would also elevate one county above another despite the fact that each county's sovereignty is coequal.

Pinellas County, on the other hand, argues that it is a political subdivision of the State of Florida and, as such, is afforded an "inherent sovereign immunity" from taxation. See Dickinson v. City of Tallahassee, 325 So. 2d 1, 3 (Fla. 1975) (holding state, county, and county school board were immune from tax levied by city); see also Canaveral Port Auth. v. Dep't of Revenue, 690 So. 2d 1226, 1228 (Fla. 1996) (holding that a port authority was not immune from ad valorem taxation because, unlike a county, it was not a political subdivision of the state); Park–N–Shop, 99 So. 2d at 573–74. Emphasizing the distinction between an exemption and immunity, Pinellas County

contends that there is no power to tax the state or its political subdivisions because they are immune. Dickinson, 325 So. 2d at 1 ("Exemption presupposes the existence of a power to tax whereas immunity connotes the absence of that power." (quoting Orlando Utils. Comm'n v. Milligan, 229 So. 2d 262, 264 (Fla. 4th DCA 1969))). Because each county's sovereign immunity emanates not from the county itself but rather from the state, it argues that property owned by a county anywhere in the state is immune from ad valorem taxation.

Pinellas County challenges the Pasco Property Appraiser's argument that there are geographical limits on a county's sovereign immunity on the grounds that it presupposes that each county is in and of itself a sovereign, when a county is only a piece or subdivision of the state, which is actually the sovereign. On this basis, Pinellas County contends that the cases cited by the Pasco Property Appraiser relating to territory outside of a state are distinguishable.

The parties also address whether a statutory exemption from taxation applies depending on the use of the county-owned property. However, the record is not sufficiently developed to address this argument, and it was not the basis for the underlying judgment.[3]

***

The Florida Constitution and Florida Statutes confer upon each county the authorization to tax all property in the county. See art. VII, § 9, Fla. Const. (providing

---

[3]The only discovery propounded was requests for admissions, and despite the parties' claim that there are no factual disputes, the parties do not appear to agree, for example, as to whether the various agreements Pinellas County entered into regarding the Property constitute leases.

- 5 -

that counties shall be authorized by law to levy ad valorem taxes); § 125.016, Fla. Stat. (2014) (authorizing counties to levy ad valorem tax "upon all property in the county"). Pinellas County's argument necessarily implies that this constitutional grant of authority to tax real property within a county's boundaries must yield to the common law immunity from taxation of another county who owns property situated therein. None of the cases cited by Pinellas County supports this assertion.

The gravamen of Pinellas County's argument is simply that because counties are subdivisions of the State, their sovereign immunity is derivative of the State's sovereign immunity; and since the State's sovereign immunity is statewide, so should a county's be:

> The constitutional sovereign immunity of the State of Florida flows to its subdivisions and cloaks both Pinellas County and Pasco County. Each county's sovereign immunity emanates, not from the county itself, but rather, from the state. Therefore, Pinellas County's properties are immune from ad valorem taxation within the State of Florida.

Pinellas County cites no authority for the proposition that a county's immunity from taxation extends beyond its territorial boundaries, relying instead on the foregoing formulation.

Because counties are political subdivisions of the State, their ad valorem taxation power must necessarily yield to the immunity of the State, whose boundaries subsume all county property. But that does not mean that a county's taxation authority must yield to the immunity of another county, whose boundaries, of course, are neither overlapping nor coextensive with any other county.

Like a county's assertion of immunity from municipal taxes on property the county owns within its own boundaries, see Dickinson 325 So. 2d at 3, the State's

assertion of immunity from county taxation is not extraterritorial. However, a state that owns property outside its territorial boundaries cannot assert immunity from taxation by the jurisdiction in which that property lies, such as another state. In fact, this court is unaware of any political entity—not states, not Indian tribes, not nations—that can claim sovereign immunity from taxation for its extraterritorial land holdings. Pinellas County apparently aims to be the first.

Nations are not immune from taxation of their extraterritorial property. Cf. City of New York v. Permanent Mission of India to the United Nations, 618 F.3d 172, 175 (2d Cir. 2010) (holding that the Foreign Missions Act "permits the State Department to designate affirmative benefits such as tax exemptions and that the Act allows the State Department to make such tax exemptions preemptive of State and municipal tax laws"). Indian tribes are not immune from taxation of their extraterritorial property. See Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148–49 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."); cf. Miccosukee Tribe of Indians of Fla. v. Dep't of Envtl. Prot. ex rel. Bd. of Trs. of Internal Improvement Tr. Fund, 78 So. 3d 31, 34 (Fla. 2d DCA 2011) (holding that the eminent domain action did not implicate the Tribe's sovereign immunity because it was an in rem action involving land that "is not tribal reservation land, is not within the aboriginal homelands of the Tribe, is not allotted land, and is not held in trust by the federal government for the Tribe"). And states are not immune from taxation of their extraterritorial property. See Georgia, 264 U.S. at 481 (concluding that Georgia's sovereignty did not extend into Tennessee by its purchase of land to operate a railway).

Pinellas County argues that a state's loss of sovereign immunity across the line of a co-sovereign state has no applicability here because all of Florida's counties are within the boundaries of the state, which is the sovereign from which the counties' sovereignty derives. But counties have boundaries too. And, just as sister states are separate entities, sister counties are separate entities as well.

Like states, counties are creatures of the Constitution. See art. VIII, § 1, Fla. Const. ("The state shall be divided by law into political subdivisions called counties."). And they have their own rights as separate political entities. It is true that a county "deriv[es] its power wholly from the sovereign state." Amos v. Mathews, 126 So. 308, 321 (Fla. 1930); see art. VIII, § 1, Fla. Const. ("Counties may be created, abolished or changed by law . . . ."). However, that does not mean that counties lack a separate, autonomous identity; a county is not "a mere arm or agency of the state" or merely "the state acting locally." Amos, 126 So. at 321.

> [T]he principle of local self-government does not constitute each county "an independent sovereignty. . . ." Nevertheless, their existence as local entities for local purposes as well as their existence as legal political divisions of the state is recognized by the Constitution. The same power which created the Legislature, namely, the sovereign people, recognized the counties. While a county in the performance of certain functions is an agency or arm of the state, it is also something more than that. . . . While the county is an agency of the state, it is also under our Constitution, to some extent at least, an autonomous, self-governing, political entity with respect to exclusively local affairs, in the performance of which functions it is distinguished from its creator, the state . . . .

Id. (reasoning that if a county "were no more than a mere agent of the state—the state acting locally—bonds issued by a county would in effect constitute state bonds").

- 8 -

Pasco County and Pinellas County might each derive its sovereignty from the state, of which each are subdivisions. But it does not follow that each may exert its sovereignty within the territory of the other so as to vitiate the constitutional power the other enjoys within its own jurisdiction. The distinction between an exemption and an immunity from taxation—asserted by Pinellas County to justify such encroachment on the power of its neighbor—is actually a distraction. States are immune from taxation, but that immunity does not eliminate their obligation to pay taxes on property situated in another political entity's jurisdiction.

In other words, even though an immunity from taxation indicates "the absence" of the "power to tax," Dickinson, 325 So. 2d at 1, some political entities actually do have the power to tax other entities that are immune from taxation: those political entities in whose territorial jurisdiction the otherwise immune entities' property lies. This is true of states, Indian tribes, and nations. Nothing about the distinction between immunity and exemption makes this untrue with regard to a county. Political entities only have sovereign immunity where they are sovereign and, to paraphrase a point cogently expressed by Judge Casanueva in his concurring opinion: Pinellas and Pasco cannot both be sovereign on the same matter in the same place.

The trial court asserted that only the State can waive sovereign immunity and that it has not done so for the ad valorem taxation of properties owned by counties outside their county lines. And Judge Black cites the lack of express waiver of such immunity as support for his dissenting opinion. But that presupposes that counties are immune from taxation of property situated outside their boundaries.

- 9 -

Neither the trial court nor Pinellas County has identified any case law or constitutional provision that supports the proposition that counties are immune from taxation of their extraterritorial properties. Instead, Pinellas County has cobbled together inferences from inapposite cases to justify the faulty deduction that, because a county is a subdivision of the State, a county's taxation immunity must be coterminous with the State's taxation immunity.

Pinellas County urges this extraterritorial extension in the face of constitutional language guaranteeing each county the right to tax all real property within its boundaries. That explicit taxation authority cannot be abrogated by common law taxation immunity that no Florida court has ever held to extend beyond an immune sovereign's territorial boundaries.

We therefore reverse the trial court's order and remand for further proceedings not inconsistent with the foregoing, which may include a determination of whether the Property is statutorily exempt from taxation by Pasco County. We also certify the following question to the Florida Supreme Court as one of great public importance:

> IS PROPERTY OWNED BY A COUNTY LOCATED OUTSIDE ITS JURISDICTIONAL BOUNDARIES IMMUNE FROM AD VALOREM TAXATION BY THE COUNTY IN WHICH THE PROPERTY IS LOCATED?

Reversed and remanded.


CASANUEVA, J., Concurs with opinion.
BLACK, J., Dissents with opinion.

CASANUEVA, Judge, Concurring.

This case of first impression presents an issue of the extent to which a county may claim sovereign immunity as a defense to payment of real estate taxes imposed by another county in which the real property is found. In my view, the analysis of this issue turns in part on whether, as a matter of law, the asserting county, Pinellas County, is operating as a sovereign in this instance. I conclude that the answer is no because—to paraphrase a line from the movie *Highlander*—there can be only one. Here, the mantle of sovereign rests on the shoulders of Pasco County because the land at issue rests within the territorial boundary establishing its constitutional domain.

I.

"The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, . . . was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature." Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005) (citing § 2.01, Fla. Stat. (2004)). In Florida, the legislature has waived sovereign immunity in the area of torts, § 768.28, Fla. Stat. (2014), but has not directly spoken to the issue presently before this court. At its core, Pinellas County asserts that its claim is founded on the common law and that as an equal sovereign under state law it is immune from taxation. In opposition, Pasco County asserts that the common law does not afford Pinellas County an immunity from taxation on real property residing within Pasco County's territorial domain. Despite a claim of immunity, our jurisprudence has observed "[t]hat, within constitutional limits, the Legislature may

- 11 -

provide for the taxation of lands or other property of the State." State ex rel. Charlotte County v. Alford, 107 So. 2d 27, 29 (Fla. 1958).

By constitutional provision, our state is divided "into political subdivisions called counties." Art. VIII, § 1(a), Fla. Const. To these counties is afforded the power and authority "to levy ad valorem taxes." Art. VII, § 9, Fla. Const. For tax purposes, our legislature has mandated that "all property located within the county" is to be assessed. § 192.011, Fla. Stat. (2014). Property "shall be assessed according to its situs," § 192.032, and real property is to be assessed "in that county in which it is located and in that taxing jurisdiction in which it may be located," § 192.032(1). Here, the power to assess and impose real estate taxes is vested, both by our constitution and by statutory enactment, in Pasco County. Neither source of law affords Pinellas County immunity from this form of taxation, nor has Pinellas County been able to cite such a specific authority.

Accordingly, I conclude that the legislature, through its enactments, and the people, by approving our state Constitution, have authorized the situs county to impose and collect real estate taxes on the property located within its domain and, in doing so, have not specifically afforded another county—a coequal sovereign, within our constitutional hierarchy of levels of government—an immunity from real estate taxation for that real property not located within its defined domain.

II.

At common law the doctrine of sovereign immunity was said to originate in the maxim, "[T]he king can do no wrong." Cauley v. City of Jacksonville, 403 So. 2d 379, 381 (Fla. 1981); see also Louis L. Jaffe, Suits Against Governments and Officers:

- 12 -

Sovereign Immunity, 77 Harv. L. Rev. 1 (1963).  However, acquiring real property outside its lawful boundaries by purchase does not afford Pinellas County the right to raise its flag and assert its dominion as a sovereign over Pasco County, the county in which that land is located.  Purchasing real estate does not afford the right to claim dominion by conquest and to thereafter govern the subject land.

For these reasons, I conclude that there is and can only be one sovereign in this case, and that sovereign is Pasco County.  Therefore, the protection provided by sovereign immunity is not within the rights held by Pinellas County.  I would reverse the trial court's order on this basis.

III.

Further, I join fully in the majority opinion authored by Judge Atkinson.

- 13 -

BLACK, Judge, Dissenting.

Because neither the Florida Constitution nor the controlling statutes express a waiver of the immunity from taxation of county-owned property, I would affirm the trial court's order.  Absent such a waiver, the property owned by Pinellas County within the boundaries of Pasco County remains immune from taxation.  Therefore, I respectfully dissent.  Recognizing, however, the potential impact of this issue, particularly in instances where a county may be operating a for-profit business on the property it owns in another county, I would also certify a question of great public importance.

It is well-settled that "[t]he [S]tate and its political subdivisions, like a county, are immune from taxation because there is no power to tax them."  Cason v. Fla. Dep't of Mgmt. Servs., 944 So. 2d 306, 309-10 (Fla. 2006) (quoting Dickinson v. City of Tallahassee, 325 So. 2d 1, 3 (Fla. 1975)); accord Markham v. Broward County, 825 So. 2d 472, 473 (Fla. 4th DCA 2002) ("All counties are political subdivisions of the [S]tate, Art. VIII, § 1, Fla. Const., and under Canaveral[ Port Authority v. Department of Revenue, 690 So. 2d 1226, 1228 (Fla. 1996),] are immune [from taxation].").[4]  This immunity from taxation "is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government."  Cason, 944 So. 2d at 309 (quoting State ex rel. Charlotte County v. Alford, 107 So. 2d 27, 29 (Fla. 1958)); see Sun 'N Lake of Sebring Improvement Dist. v. McIntyre, 800 So. 2d 715, 720 (Fla. 2d

_____

[4]Immunity should not be confused with exemption.  "Exemption presupposes the existence of a power to tax whereas immunity connotes the absence of that power."  Cason, 944 So. 2d at 309-10 (quoting Dickinson, 325 So. 2d at 3); accord Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 255 (Fla. 2005); Russell v. Se. Housing, LLC, 162 So. 3d 262, 266-65 (Fla. 3d DCA 2015).

DCA 2001) ("Immunity from taxation is not derived from the state constitution; it arises from common law concepts of sovereign immunity." (citing Dickinson, 325 So. 2d at 3 n.6)).

Nevertheless, "[d]espite the State's immunity, 'within constitutional limits, the [l]egislature may provide for the taxation of lands or other property of the State.' " Cason, 944 So. 2d at 310 (quoting Alford, 107 So. 2d at 29); see Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471-72 (Fla. 2005) ("[T]he Florida Constitution provides that the [l]egislature can abrogate the [S]tate's sovereign immunity." (citing Art. X, § 13, Fla. Const.)). "However, the authority to tax the State cannot be inferred. Such authority must be manifested by 'clear and direct expression of the State's intention to subject itself to' the tax." Cason, 944 So. 2d at 310 (emphasis added) (quoting Dickinson, 325 So. 2d at 4); accord Manatee County v. Town of Longboat Key, 365 So. 2d 143, 147 (Fla. 1978) (holding that a county's waiver of immunity from taxation must be "clear and unequivocal"). "[W]aiver will not be found as a product of inference or implication." Am. Home Assurance Co., 908 So. 2d at 472 (citing Spangler v. Fla. State Tpk. Auth., 106 So. 2d 421, 424 (Fla. 1958)). In the case before us, there was simply no express waiver. This fact is fatal to the Pasco County Property Appraiser's case.

Counties are authorized by the Florida Constitution and statutory law to assess and impose ad valorem taxes on property within their boundaries. See art. VII, § 9, Fla. Const.; §§ 125.016, 192.011, Fla. Stat. (2014). The majority cannot cite to a clear waiver of the immunity from taxation of county-owned property in these authorities but instead concludes that this immunity from taxation does not extend beyond a

county's boundaries into that of another just as a state's sovereign immunity does not extend into the territorial boundaries of another sovereign. But while the states are separate sovereigns, Pinellas County and Pasco County are political subdivisions of the same sovereign from which their immunity from taxation emanates. See art. VIII, § 1(a), Fla. Const.; Arnold v. Shumpert, 217 So. 2d 116, 120 (Fla. 1968) (holding that as a subdivision of the State, a county "enjoys the [S]tate's sovereign immunity").[5] Moreover, I have found no support in the law to suggest that at its foundation the immunity afforded to the counties was intended to be restricted to their boundaries. Cf. Gwin v. City of Tallahassee, 132 So. 2d 273, 276 (Fla. 1961) (holding that property owned by the City of Tallahassee located in Wakulla County and used for municipal purposes was exempt from taxation by the tax assessor of Wakulla County because "[t]he exemption inures to the property itself when held and used for municipal purposes" and "[t]he [c]onstitution makes no requirement as to its location." (quoting Saunders v. City of Jacksonville, 25 So. 2d 648, 650 (Fla. 1946))).

The concurrence further concludes that because neither article VII, section 9, of the Florida Constitution nor chapter 192 afford Pinellas County immunity from taxation, the authority vested in Pasco County to tax property within its boundaries is unyielding. However, it is not the lack of a clear expression of immunity in the

---

[5]Unless the immunity at issue derived from federal law, it certainly would not extend beyond the territorial boundaries of Florida. It would be more appropriate to compare the circumstances of this case to those involving the immunity from taxation of property owned by the United States and located within the territorial boundaries of Florida. See, e.g., Russell v. Se. Housing, LLC, 162 So. 3d 262, 263-64 (Fla. 3d DCA 2015) (holding that because property owned by the United States is immune from state taxation, the properties serving the Naval Air Station at Key West were immune from Florida ad valorem taxes).

constitution and applicable statutes that controls the outcome of the issue but rather the lack of a clear waiver of that immunity which otherwise remains. The majority and concurrence have improperly inferred a waiver of Pinellas County's immunity from taxation when in fact "[t]he [l]egislature's inaction does not constitute a waiver of sovereign immunity." See City of Key West v. Fla. Keys Cmty. Coll., 81 So. 3d 494, 497-99 (Fla. 3d DCA 2012) (concluding that the State's sovereign immunity from the city's imposition of stormwater utility fees was not waived by inference). "[S]overeign immunity is the rule[] rather than the exception," and "the State enjoys sovereign immunity unless immunity is expressly waived." Id. at 497-98 (quoting Pan–Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984)).

The supreme court's decision in Cason is instructive. In analyzing whether the nonclaim provisions of section 194.171, Florida Statutes (2006), applied to State-owned property, such that the failure to comply with the statute would result in the issuance of tax certificates and the sale of tax deeds, the supreme court considered "the effect of sovereign immunity on the application of section 194.171 to actions filed by the State." 944 So. 2d at 312. The court determined that "[t]he crucial inquiry is whether the language of section 194.171 clearly and unambiguously demonstrates legislative intent to apply this section to challenges by the State on State-owned property." Id. That inquiry turned on whether the State is a taxpayer as used in chapter 194. Though the supreme court found definitions of "taxpayer" to be useful, including the definition set forth in section 192.001(13), Florida Statutes (2006),[6] a related statute, it explained

---

[6]Section 192.001(13), Florida Statutes (2006), defined "taxpayer" to mean "the person or other legal entity in whose name property is assessed." This definition remains unchanged in the 2014 version of the statute.

- 17 -

that in construing the statutory term consideration must be given to the purpose of section 194.171, "which is to ensure a reliable and predictable method for counties to collect revenue while also providing for taxpayer challenges to tax assessments." Cason, 944 So. 2d at 313. The supreme court concluded that

> a "taxpayer" is not merely the entity in whose name the property is assessed, but one whom the county has the power to tax subject to disputes about individual assessments. In short, a "taxpayer" under section 194.171 is a taxable entity. This definition excludes the State and its political subdivisions, which are "immune from taxation since there is no power to tax them."

944 So. 2d at 313 (quoting Dickinson, 325 So. 2d at 3). "Accordingly, where the State files suit challenging ad valorem taxation on grounds of sovereign immunity, the State's assertion that it is not a taxable entity takes it outside the category of 'taxpayer' targeted by section 194.171." Id. Section 192.011, like section 194.171, is part of "a comprehensive statutory scheme for counties to assess and collect taxes simultaneously with procedures for taxpayer challenges to tax assessments." Ward v. Brown, 894 So. 2d 811, 814 (Fla. 2004). Given that chapter 192 and chapter 194 are part of the same statutory scheme, it necessarily follows from the supreme court's conclusion that the "entity in whose name property is assessed" pursuant to section 192.011 cannot include the counties as political subdivisions of the State. The supreme court in Cason went on to hold as follows:

> The necessity of a clear expression of legislative intent to authorize taxation of the State reinforces our construction of section 194.171. We presume that the [l]egislature was aware of precedent recognizing both the State's immunity and the necessity of a clear and direct expression of intent to authorize taxation of the State when it enacted the jurisdictional nonclaim provision, section 194.171, in 1983. Thus, the absence of specific language

- 18 -

> imposing the procedural requirements on the State, rather than on taxpayers generally, is significant.
>
>   . . . .
>
> We do not find, either within section 194.171 or elsewhere, the clear and unambiguous expression of legislative intent necessary to conclude that the [l]egislature intended that the State be subject to the harsh provisions of section 194.171 and as a result lose its immunity from taxation.

Id. at 313-14, 316 (citations omitted).[7]

Though involving a municipality rather than a county, Dickinson is also instructive. Dickinson concerned the validity of a utility tax imposed by the City of Tallahassee on the State. 325 So. 2d at 2. The city ordinance imposed a tax on all purchases of electricity, water, and gas, and while the federal government and churches were specifically exempted, the State was not. Id. The supreme court discussed the interplay between the constitutional provision allowing a municipality to impose certain taxes, see art. VII, § 9(a), Fla. Const., and the implementing statute upon which the municipality based its claim that it could tax the State, see § 166.231, Fla. Stat. (1973). The result was that neither the constitution nor the enabling legislation constituted a waiver of the State's immunity. Dickinson, 325 So. 2d at 3 ("The crux of this case . . . is whether the State has waived its immunity from city taxation in either the 1968 Constitution or the applicable tax statutes. We think not."). The court was "unwilling to supply that implication" where it was not expressly stated. Id. at 4. The same analysis applies here. The constitution, chapter 192, and chapter 125 authorize

_____

[7]The supreme court did not address whether the property at issue in Cason—which had been leased to a nongovernmental entity and was being used for nongovernmental purposes—was immune from ad valorem taxation. Id. at 316.

- 19 -

counties to levy ad valorem taxes. But neither the constitution (as stated outright in Dickinson) nor the statutes supply the necessary express waiver of immunity. Park-N-Shop, Inc. v. Sparkman, 99 So. 2d 571, 573 (Fla. 1957) (reviewing the constitution and applicable statutes and concluding that buildings on county-owned property that was leased to private businesses could not be subject to taxation because the "property of the [S]tate and of a county, which is a political division of the [S]tate, Sec. 1, Article VIII, is immune from taxation.").

The above-referenced authorities demonstrate that as a county's immunity from ad valorem taxation emanates from the State and not from the county itself, the immunity must necessarily extend to the boundaries of the State absent a clear and unequivocal waiver of that immunity. I have found no express waiver of a county's immunity from taxation in the controlling statutes as would be applicable to this case. Had the legislature intended such a waiver, it would have made that intention known. In fact, section 125.421, titled "Telecommunications services," provides in part as follows:

> A telecommunications company that is a county or other entity of local government may obtain or hold a certificate required by chapter 364, and the obtaining or holding of said certificate serves a public purpose only if the county or other entity of local government:
>
> . . . .
>
> (3) Notwithstanding any other provision of law, pays, on its telecommunications facilities used to provide two-way telecommunication services to the public for hire and for which a certificate is required under chapter 364, ad valorem taxes, or fees in amounts equal thereto, to any taxing jurisdiction in which the county or other entity of local government operates. Any entity of local government may pay and impose such ad valorem taxes or fees. Any immunity of any county or other entity of local government from taxation of the property taxed by this section is hereby waived.

- 20 -

§ 125.421(3) (emphasis added).[8]  Nowhere else in chapter 125 or chapter 192 does the legislature indicate that the immunity from taxation has been waived.  And while I recognize that the Florida Constitution and chapters 125 and 192 authorize counties to levy ad valorem taxes upon property within its boundaries, that authority does not preempt another county's immunity from taxation in the first instance: absent a clear and express waiver, immunity from taxation remains.  See City of Key West, 81 So. 3d at 499.  This premise is further supported by the fact that should Pinellas County refuse to pay the ad valorem taxes despite the majority determining that its immunity from taxation does not extend into Pasco County, the Pasco County Property Appraiser would not have the power to issue tax certificates.  See Cason, 944 So. 2d at 314-15 ("[T]he [l]egislature did not intentionally enact a statutory scheme that precludes the loss of State property for nonpayment of taxes on leased property but allows the loss through a tax deed sale of State property that has not been leased merely because the State failed to file a timely challenge to the assessment").  The statutory scheme "suggests the [l]egislature never contemplated that the State would be a taxpayer whose property could be lost through nonpayment of ad valorem taxes." Id. at 315.  If tax certificates cannot be issued on State and county-owned property due to sovereign immunity it would be illogical to permit the assessment and imposition of taxes on that property in the first place given that there is no recourse for the failure to pay the imposed taxes.  Thus, a county's immunity from taxation which derives from the State

---

[8]As pointed out by the concurrence, the legislature has also waived sovereign immunity for liability for torts.  See § 768.28(1).

- 21 -

extends to the boundaries of the State—not just to the boundaries of that county—absent an express waiver.

My position is further bolstered by Prosser v. Polk County, 545 So. 2d 934 (Fla. 2d DCA 1989), a case that Pinellas County has astutely brought to our attention in the motion for rehearing, rehearing en banc, certification, or clarification. In that case, David Prosser and Elouisa Ramose filed a petition for writ of prohibition to stop Polk County's eminent domain action involving their property. Id. at 935. Polk County sought to condemn the petitioners' property in order to extend a roadway. Id. Importantly, the property at issue was located entirely within the boundaries of Hillsborough County. Id. The "sole question" presented was "whether Polk County may condemn and take property located outside its territorial limits." Id. In answering that question, this court recognized "that the authority of a county government to exercise the power of eminent domain derives solely from statute." Id. (citing Peavy-Wilson Lumber Co. v. Brevard County, 31 So. 2d 483, 485 (Fla. 1947)). The only geographical limitation placed on this power in the governing statute, section 127.01(1), Florida Statutes (1987)—which remains unchanged in the current version of the statute—was the following: "no county has the right to condemn any lands outside its own county boundaries for parks, playgrounds, recreational centers, or other recreational purposes." Prosser, 545 So. 2d at 935 (quoting § 127.01(2)). This court concluded that Polk County's eminent domain action against the petitioners was therefore not precluded since Polk County was not seeking to condemn the property in Hillsborough County for a recreational purpose. Id. Because "the applicable statute is silent as to where such property may lie," this court could not "find that the present action is . . . precluded." Id.;

- 22 -

see also <u>Pinellas County v. Baldwin</u>, 80 So. 3d 366, 370 (Fla. 2d DCA 2012) (citing <u>Prosser</u> and recognizing that "there could be a question about [Pinellas] County's authority to exercise the power of eminent domain in [Hillsborough County]").

The power of eminent domain—like the "power" of immunity from taxation—"is an attribute of the sovereign." <u>See</u> <u>Peavy-Wilson Lumber</u>, 31 So. 2d at 485; <u>Pinellas County</u>, 80 So. 3d at 370 (quoting <u>Dep't of Health & Rehab. Servs. v. Scott</u>, 418 So. 2d 1032, 1033 (Fla. 2d DCA 1982)). While a county's power of eminent domain derives from statute unlike a county's power of immunity from taxation, the dictates of <u>Prosser</u> are controlling. And as plainly set forth in <u>Prosser</u>, a county's sovereign power is not limited to its own boundaries but extends into the boundaries of the other counties of this state absent an express limitation otherwise. As such, Judge Casanueva's assertion, which was adopted by the majority, that there "can only be one sovereign" is in direct conflict with our precedent.

Based on the foregoing, I would affirm the order on appeal. I do recognize the potential impact of the immunity and even the potential abuse of it, particularly where the sovereign subdivision is operating a for-profit enterprise, but in the absence of a waiver, we must apply the law as it is currently written. <u>See</u> <u>Markham</u>, 825 So. 2d at 473-74 (concluding that even where county property is leased to for-profit businesses for nongovernmental purposes the county property is immune from taxation where there is no clear and unambiguous waiver of that immunity in the controlling statute). Given the potential impact of the immunity—not to mention the intradistrict conflict created by the majority opinion—I agree with the majority's decision to certify a question as a

- 23 -

matter of great public importance.  However, I believe the question would be more

appropriately phrased as follows:

> IS SOVEREIGN IMMUNITY FROM TAXATION OF
> COUNTY-OWNED PROPERTY WAIVED WHEN THAT
> PROPERTY IS LOCATED WITHIN THE BOUNDARIES OF
> ANOTHER COUNTY?